**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
jsussberg@kirkland.com

Chad J. Husnick, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
chusnick@kirkland.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489 3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>CAREISMATIC BRANDS, LLC, *et al.*,<br><br>                Debtors.[1] | Chapter 11<br><br>Case No. 24-10561<br><br>(Jointly Administered) |
| CAREISMATIC BRANDS, LLC, *et al.*,<br><br>                Plaintiffs,<br><br>v.<br><br>MICHELMAN & ROBINSON, LLP,<br><br>                Defendant. | Adv. Proc.  No. 24-_____ |

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.donlinrecano.com/careismatic. The location of Debtor Careismatic Brands, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is: 1119 Colorado Avenue, Santa Monica, California 90401.

**DEBTORS' VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF (I) DECLARING THAT THE AUTOMATIC
STAY APPLIES TO THE FEE ACTION AGAINST NON-DEBTORS, (II) EXTENDING
THE AUTOMATIC STAY TO SUCH CLAIMS, (III) PRELIMINARILY ENJOINING
SUCH CLAIMS, AND (IV) DECLARING THAT THE FEE ACTION IMPROPERLY
SEEKS TO EXERCISE CONTROL OVER PROPERTY OF THE DEBTORS' ESTATES**

TO THE HONORABLE VINCENT F. PAPALIA,
UNITED STATES BANKRUPTCY COURT:

Careismatic Brands, LLC ("**CBI**") and its debtor affiliates (together with CBI, "**Plaintiffs**"

or the "**Debtors**"), the debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Chapter 11 Cases**") and plaintiffs in the above-captioned adversary proceeding

(this "**Adversary Proceeding**"), hereby allege as follows:

## NATURE OF THE ACTION

1.      The Debtors are the leading designer, marketer, and distributor of medical apparel,

footwear, and accessories.  After years of operational and financial challenges caused by market

headwinds, shifting consumer preferences, and material ongoing litigation, the Debtors

commenced these Chapter 11 Cases on January 22, 2024 under title 11 of the United States Code

(the "**Bankruptcy Code**").  Through these cases, the Debtors intend to effectuate the

comprehensive recapitalization transaction embodied in the Restructuring Support Agreement

("**RSA**")[2] and to emerge with a stronger balance sheet and greater financial flexibility as they

continue serving their customers.[3]  The Debtors also intend to use the Chapter 11 process to resolve

some of their most costly and burdensome prepetition litigation.

---

[2]    A true and correct copy of the Restructuring Support Agreement is attached as Exhibit A to the Percy Declaration
       filed contemporaneously with this Complaint.

[3]    *Amended Declaration of Kent Percy, Chief Restructuring Officer of Careismatic Brands, LLC, in Support of
       Chapter 11 Petitions and First Day Motions* [Docket No. 33] (hereinafter, the "**First Day Declaration**"), ¶ 17.

2

2.      Amongst the most vexing of these prepetition disputes are a series of lawsuits and arbitrations arising from an unsuccessful representation of the Debtors by their former outside counsel, Michelman & Robinson, LLP ("**M&R**" or "**Defendant**").  M&R's unsuccessful litigation efforts on behalf of the Debtors, and the resulting disputes over M&R's fees, have spawned both (i) litigation and arbitration between the Debtors and M&R (the "**Careismatic Matters**")[4]; and (ii) litigation by M&R against non-Debtors, including the Debtors' Sponsor (as defined below), former CEO, Girisha Chandraraj, and Chairman of the Board, Michael Penner (the "**Fee Action**")[5].

3.      The Debtors' disputes with M&R—an aggressive law firm with deep knowledge of the Debtors' business and connections to former management—have inflicted significant expense, burden, and distraction on the Debtors.  Indeed, ongoing litigation expense burden— through both fees in the Careismatic Matters and indemnity obligations owed to the defendants in the Fee Action—were a significant strain on the Debtors' prepetition liquidity.  And as set forth below, certain of these expenses and the Debtors' involvement in the Fee Action will continue post-petition, and worse, may affect the schedule that the Debtors have sought to consummate in their Chapter 11 cases and affect or interfere with estate claims, such as veil piercing and alter ego theories, that the Debtors' Transaction Committees (defined below) are presently investigating.

4.      Accordingly, the Debtors seek a declaration that section 362(a) of the Bankruptcy Code prohibits the continuation or settlement of any action by Defendant seeking to hold certain non-debtors liable for claims raised in the Fee Action, either because the automatic stay applies to

---

[4]     The Careismatic Matters refer to the matters captioned *Michelman & Robinson, LLP v. Careismatic Brands, Inc. f/k/a Strategic Partners, Inc.*, ADRS Inquiry No. 40826; *Michelman & Robinson, LLP v. Careismatic Brands, LLC*, Los Angeles County Superior Court Case No. 23STCV12186; *Careismatic Brands v. Michelman & Robinson, LLP et al.*, Los Angeles County Superior Court Case No. 23STCV30066.

[5]     The Fee Action refers to the matter captioned *Michelman & Robinson, LLP v. Partners Group et al.*, Los Angeles County Superior Court Case No. 23STVC05652.

such claims by its express terms or because "unusual circumstances" warrant an extension of the automatic stay to such claims. The Debtors also seek an injunction under section 105(a) of the Bankruptcy Code providing for the same relief while the Chapter 11 Cases are pending.

5.      While the automatic stay resulting from the filing of these Chapter 11 Cases has provided for a much-needed breathing spell in the Careismatic Matters, the same cannot be said of the Fee Action. M&R has continued to press its claims in this action despite these bankruptcy cases and the costs, burden, and distraction to the Debtors has continued apace. In short, as set forth herein, the continued litigation of the Fee Action threatens the success of these Chapter 11 Cases for a number of related reasons.

6.      First, pursuant to the RSA between Careismatic Brands, LLC, certain creditors, and Partners Group (USA) Inc. ("**Partners Group**") and its affiliates, the Debtors owe indemnification obligations to certain parties, including those that are implicated by the Fee Action ("**Indemnification Obligations**"). Restructuring Support Agreement at p. 79. Thus, the continuation of the Fee Action raises significant risks with respect to potential claims against the Debtors' estates and potential obligations that may be implicated under the RSA during this critical time, and will continue to do so unless and until the automatic stay is deemed to apply to the Fee Action. Furthermore, the continuation of the Fee Action will also decrease the available Director & Officer ("**D&O**") Insurance Coverage as the cost of defense comes out of the D&O limits, thus further impacting the Debtors' estates. Percy Declaration, ¶ 24.

7.      Second, M&R has refused to refrain from continued discovery of the Debtors in the Fee Action, inflicting continuing expense on the Debtors' estates and impacting the Debtors' ability to focus on their business operations during this critical phase in these Chapter 11 Cases. As but one example, M&R has noticed the deposition of a Careismatic Brands, LLC corporate

witness. This deposition will necessitate many hours of preparation and additional time and expense during the actual deposition. The continued prosecution of the Fee Action would require the Debtors to defend themselves no differently than with respect to the stayed Careismatic Matters. Indeed, the requested deposition relates to the exact same issues and involved parties as the *Michelman & Robinson, LLP v. Careismatic Brands, Inc. f/k/a Strategic Partners, Inc.* arbitration (ADRS Inquiry No. 40826). Continued participation by the Debtors in ongoing litigation would significantly deplete estate resources that could otherwise be used to fund a comprehensive resolution of these Chapter 11 Cases.

8.    And third, in pursuing their claims in the Fee Action, Defendant has continued to pursue discovery regarding allegations of domination and control by Partners Group and representations purportedly by Partners Group, in a thinly disguised attempt to make alter ego and veil piercing claims under a different rhetoric, potentially harming the Transaction Committees' ongoing investigations and potentially the agreements set forth in the RSA. This includes M&R alleging to the judge in the Fee Action that "PG owns and controls CBI, including on a day-to-day basis," and Sanford Michelman, an attorney and named partner at M&R, baselessly testifying in his deposition that "Partners Group employees actually treat themselves as CBI" due to "how commingled these two are." *See* Letter to Kim re Automatic Stay.[6]

9.    Finally, the Debtors seek a declaration that any alter ego and veil piercing claims like those asserted in the Fee Action are property of the Debtors' estates that the Debtors have standing to pursue and compromise while the Chapter 11 Cases are pending. These claims are the subject of the Debtors' ongoing investigation and, to the extent there are viable claims, will be

---

[6]    A true and correct copy of the Letter to Kim re Automatic Stay, dated January 23, 2024, is attached as Exhibit C to the Percy Declaration filed contemporaneously with this Complaint.

pursued for the benefit of all creditors in these cases, rather than pursued by Defendant for its own private benefit.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors consent to entry of final orders or a final judgment by this Court in this Adversary Proceeding.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1409.

12.     The statutory bases for the relief requested herein are sections 105(a), 362(a), and 541(a) of the Bankruptcy Code and Bankruptcy Rules 7001 and 7065.  The Debtors have made no prior request for the relief requested herein to this or any other court.

## THE PARTIES

13.     The Plaintiffs are the Debtors.

14.     Debtor Careismatic Brands LLC includes a portfolio of brands, including those based in Delaware and New Jersey.  *See* First Day Declaration, ¶¶ 25, 35.

15.     Defendant Michelman & Robinson, LLP is a California limited liability partnership.  *See* First Amended Complaint.[7]

---

[7]     A true and correct copy of the First Amended Complaint in *Michelman & Robinson, LLP v. Partners Group et al.*, Los Angeles County Superior Court Case No. 23STVC05652 is attached as Exhibit B to the Percy Declaration filed contemporaneously with this Complaint.

**FACTUAL BACKGROUND**

I.      **Overview of the Debtors**

16.      The Debtors and their predecessors in interest were founded in 1995, and have grown from operating a single flagship brand, Cherokee Medical Uniforms, to a portfolio of seventeen brands.  First Day Declaration, ¶ 7.  The Debtors are the market leader in the $3 billion domestic medical scrubs industry, with dominant positions in the wholesale and online marketplace segments.  *Id.*  As their business has expanded over the years, the Debtors have continued to support caretakers and healthcare workers in delivering high-quality patient care in approximately 65 countries around the world.  *Id.* at ¶ 8.

17.      The COVID-19 pandemic highlighted the Debtors' mission—finding new ways to elevate healthcare professionals by providing high-quality apparel and personal protective equipment—and how this mission remains central to the Company's growth.  *Id.* at ¶ 9.  The pandemic led to sharp increases in medical apparel demand, validating the Company's investments into new brands, technologies, and manufacturing capacity.  *Id.*  This confluence of factors led to record-setting revenue for the Debtors in both 2020 and 2021, with revenue growing to $687 million in 2021 (approximately 38% greater than the $498 million in revenue posted in 2019).  *Id.*

18.      Despite this success, operational and financial factors have stressed the Company's financial condition over the last two years, and ultimately necessitated this restructuring.  *Id.* at ¶ 10.  While the Debtors expanded capacity to meet market demand in 2020 and 2021, demand has normalized to its historical trendline in 2022 and 2023.  *Id.*  Macroeconomic issues, including a rapid and dramatic rise in interest rates, persistent supply chain disruptions, rising material costs, and a challenging labor market exacerbated significantly weaker industry-wide demand.  *Id.*  The Debtors have also faced pressure from increased competition and a shift in consumer purchasing preferences.  *Id.* at ¶ 11.

19.    While the Debtors anticipate significant growth and improved net margins from their burgeoning direct-to-consumer and online marketplace segments over the next five years, the Company remains in a trough period as it restructures its legacy business and online businesses. *Id.* at ¶ 11.

20.    Furthermore, in addition to market headwinds and the challenges posed by rapidly shifting consumer preferences, material ongoing litigation has posed unsustainable liquidity challenges to the Debtors.  *Id.* at ¶ 12.

21.    In an effort to address the significant headwinds and liquidity challenges facing the Company following the COVID-19 pandemic, in October 2022, investment vehicles managed or advised by Partners Group (USA) Inc. or its affiliates (collectively, the "**Sponsor**"), provided the Company with a much-needed infusion of capital in the form of the approximately $30 million unsecured Sponsor PIK Notes.[8]  *Id.* at ¶ 13.  In addition to the Sponsor PIK Notes, beginning in late 2023, an affiliate of the Sponsor, party to that certain Services Agreement with the Company, dated as of January 6, 2021 (the "**Services Agreement**"), determined in an effort to help preserve the Company's liquidity, it would defer reimbursement of certain expenses to which it is entitled under the Services Agreement, and defer and accrue the management fees due and owing pursuant to the Services Agreement, resulting in additional liquidity for the Company.  *Id.*  Despite the Sponsor's material contributions and concessions, however, the market challenges and legacy obligations facing the Company persisted and have required additional action and contingency planning.  *Id.*

---

[8]    The Sponsor PIK Notes were approved by the Company after the board of directors of CBI Parent, L.P. and Careismatic Brands, Inc. were informed of the Sponsor PIK Notes' terms, the Company's liquidity situation, and the availability of alternative financing from other sources.

22. Over the last eighteen months, the Company has also undergone a major operational restructuring, replacing the vast majority of its executive team, as the Company works to reduce its cost structure and execute on its long-term roadmap for omnichannel growth. *Id.* at ¶ 14.

23. Over the past two months, the Company, with the assistance of their Advisors, and support and cooperation of the Sponsor, engaged in detailed turnaround discussions and hard-fought negotiations that ultimately resulted in a go-forward restructuring plan that charted a clear and value-maximizing path forward for the Company during the chapter 11 cases and beyond. *Id.* at ¶ 17.

## II.   **The Careismatic Matters**

24. Defendant M&R represented the Debtors in multiple litigation matters, billing Careismatic entities at least $39 million in fees from 2012 until the end of 2022. The bulk of these fees arose from M&R's representation in *Strategic Partners, Inc. v. FIGS, Inc., et al.*, United States District Court, Central District of California, case no. 2:19-cv-02286-JWH-KSx (the "**FIGS case**"). In that matter alone, M&R billed over $31 million, yet the Debtors ultimately lost the litigation after a jury returned a complete defense verdict. Subsequently, a fee dispute arose between M&R and the Debtors related to the FIGS case. This fee dispute has been heavily litigated through several different matters, including the Careismatic Matters. But for the automatic stay, continued litigation of the Careismatic Matters would have consumed an enormous amount of the Debtors' remaining resources while the Debtors are attempting in good faith to focus on their recapitalization efforts. First Day Declaration, ¶ 12; Percy Declaration, ¶¶ 14-16.

## III.   **The Fee Action**

25. In addition to the Careismatic Matters, M&R is currently pursuing claims in the Fee Action, filed on March 14, 2023 in the Superior Court of California for the County of Los Angeles, against Partners Group, Michael Penner, and Girisha Chandraraj (the "**Fee Defendants**").

The Fee Action arises out of the exact same fee dispute that has been heavily litigated in the Careismatic Matters, and relates to M&R's representation of Careismatic Brands, LLC in the FIGS case.  Percy Declaration, ¶ 17.

26.    Governing and/or services agreement documents of certain of the Debtors provide the Fee Defendants with indemnification rights that may be implicated through their involvement in the Fee Action.   Subsequently, pursuant to the RSA, the Debtors will be assuming all Indemnification Obligations, including any obligations of the Debtors to indemnify "current and former officers, directors, partners, managers, members, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such directors, officers, managers, members, partners, agents, or employees, based upon any act or omission for or on behalf of the Debtors."  Restructuring Support Agreement at p. 79.

27.    Besides the expense on the Debtors caused by their indemnification obligations, Defendant has sought continuous discovery relating to the Debtors' relationship with the Fee Defendants throughout the Fee Action—and continues to do so post-petition, including seeking a corporate witness deposition of Careismatic Brands, LLC.  Furthermore, M&R has previously sought the deposition of Sid Lakhani, Careismatic Brands, LLC's Chief Executive Officer, in the Fee Action, and has pursued other depositions in the Fee Action for which a Debtor representative had to attend to preserve their rights – including a deposition of a Katten Muchin Rosenman LLP witness, co-counsel to Careismatic Brands, LLC in the FIGS case, on January 26, 2024 (after the Petition was filed).  Percy Declaration, ¶ 19.

28.    Additionally, as part of the Fee Action, among other theories, Defendant has been advancing veil piercing and alter ego theories asserting that certain Fee Defendants are alter egos of the Debtors.  These underlying alter ego and veil piercing theories pursued by M&R in the Fee

Action have proved distracting and burdensome to the Company, with ongoing liquidity risks and challenges.  First Day Declaration, ¶ 12.  Examples of these assertions include the following:

- **January 3, 2024 Joint Submission to Judge Hogue, Discovery Referee**: "As noted, Plaintiff alleges that PG owns and controls CBI, including on a day-to-day basis. Plaintiff is informed and believes that Penner and the other PG employees and representatives on CBI's board kept Layton regularly informed concerning CBI and the FIGS Litigation and that Layton dictated that the CBI board be comprised of a majority of PG employees and representatives, that CBI discharge Michael Singer, CBI's founder and highly successful CEO for more than twenty years, and that PG refuse to authorize payment of Plaintiff's invoices for services and costs at issue in this case."

- **December 6, 2023 Deposition of Sanford Michelman Tr. 303:3-20:** "Aggregating this information, and as far as I look at it, it's all one in the same as I've testified all morning. Penner, Partners Group, that's what I said when they say the board. **That's synonymous with Partners Group**. You have Partner Group in e-mails and texts with us talking about our motions to file motions in limine. **It's actually CBI. They – Partners Group employees actually treat themselves as CBI.** In fact, when Girisha Chandraraj was fired, they had a non- member, non-CBI – . . . And nonemployee person who was an employee of Partners Group fire him, unaffiliated. **That's how commingled these two are.**"

- <u>**January 18, 2024 Deposition of Sid Lakhani:**</u>

  - "Did you ever attend any other meetings of the CBI board that took place in PG's offices in Denver?" (Tr. 4:2-5)

  - "Do you have an understanding concerning the percentage of PG's stake in CBI?" (Tr. 4:9-10)

  - "During the times when you were working out of the Santa Monica offices of CBI, do you recall there being any individuals that you understood to be affiliated with PG that also worked out of those offices?" (Tr. 8:10-15)

  - "Do you have an understanding that after PG acquired CBI that PG installed various PG affiliated individuals on the board?" (Tr. 3:15-17)

**IV.    <u>The Chapter 11 Cases</u>**

29.    The Debtors commenced the Chapter 11 Cases on January 22, 2024 (the "**Petition Date**").    First Day Declaration, ¶ 4.  Since the Petition Date, the Debtors have operated their businesses and managed their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Percy Declaration, ¶ 5.  Concurrently with the Chapter 11 Cases,

and as mentioned in the First Day Hearing before this Court on January 24, 2024, an ongoing investigation has been initiated by the Transaction Committees of CBI Parent, L.P. and CBI Intermediate, Inc. (the "**Transaction Committees**") to investigate potential estate causes of action. On January 24, 2024, the Court entered an order [Docket No. 57] authorizing procedural consolidation and joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

30.     On January 23, 2024, Debtors' counsel sent a letter to Andrew F. Kim of Kim Riley Law, counsel to Defendant in the Careismatic Matters and Fee Action, notifying him of the Debtors' voluntary petitions for relief under title 11 of the United States Code, and informing Defendant's counsel of the automatic stay of any actions against the Debtors, or any efforts to exercise control over the Debtors or their property pursuant to section 362 of the Bankruptcy Code (the "**January 23 Letter**").  *See* Letter to Kim re Automatic Stay.

31.     The Debtors sought bankruptcy protection due to the ongoing costs and distractions in remedying particular issues related to the lingering effect of the Debtors' legacy business model and material ongoing litigation, particularly the Careismatic Matters and the Fee Action.  First Day Declaration, ¶ 12; *see also* Percy Declaration, ¶ 6.

32.     Defending against the Careismatic Matters and the Fee Action have threatened to swiftly exhaust the Debtors' remaining assets.  Percy Declaration, ¶ 8.  Furthermore, any potential resolution in the Fee Action would have a significant financial impact on the Debtors through indemnification claims that may arise.  *Id.* at ¶¶ 18, 24.

33.     Prior to the Petition Date, litigation costs continued to drain the Debtors of resources that could be more efficiently allocated towards the Debtors' go-forward restructuring efforts.  First Day Declaration, ¶ 17; Percy Declaration, ¶ 16.

34.     The Debtors intend to use the breathing spell and other tools afforded by chapter 11 of the Bankruptcy Code to focus on the Debtors' go-forward business plans to emerge from bankruptcy well-positioned to remain the leader of the medical apparel market.  *See Assoc. of St. Croix Condo.  Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982) (noting that the automatic stay "gives the debtor a breathing spell from his creditors.").

## V.      The Need for the Requested Relief

35.     The declaratory and injunctive relief sought in this Adversary Proceeding and the related Motions is critical to the Debtors' ability to achieve a stay of the claims that precipitated the Debtors' bankruptcy filings, pursuant to section 362 of the Bankruptcy Code.  *See* 11 U.S.C. §§ 362(a)(1) (staying "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title"), (a)(3) (staying "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate").

36.     Defendant has continued to prosecute the existing Fee Action during the pendency of these Chapter 11 Cases.  Percy Declaration, ¶ 10.  For example, Defendant has continued to move forward with the deposition of a Careismatic Brands, LLC's corporate witness despite the automatic stay.  Defendant is seeking to circumvent the automatic stay imposed in the Careismatic Matters by instead seeking discovery from the Debtors on substantially the same subject matter in the Fee Action.  Furthermore, any private discovery conducted by a single creditor involving Careismatic Brands, LLC that overlaps with the scope of the investigation being conducted by the Transaction Committees may impact the integrity of the investigation and would only serve to potentially harm the estates as a whole.

37.    In response to the Debtors' January 23 Letter (the "**January 23 Response**"), Sanford L. Michelman responded that "the stay does not apply to Klien [sic] & Wilson." Correspondence with S. Michelman.[9]  Klein & Wilson represents the Debtors in the Careismatic Matters, and will represent the Debtors in the Fee Action if a Careismatic corporate witness deposition moves forward.  Percy Declaration, ¶¶ 8, 19.

38.    The Fee Action is factually and legally predicated on the Debtors' operations, and involves the same underlying factual dispute as raised in the now-stayed Careismatic Matters. Moreover, the Debtors owe indemnification obligations to certain Fee Defendants in connection with the Fee Action.  The Fee Action does not differentiate between the Fee Defendants and claims against the Fee Defendants that are independent of the Fee Defendants' association with the Debtors.  Percy Declaration, ¶ 23.  Moreover, without immediate injunctive relief, the Debtors will be compelled to pull key estate resources and personnel away from the Chapter 11 Cases and actively defend the Fee Action.  Percy Declaration, ¶ 22.  Accordingly, the Debtors require a declaration that the automatic stay prohibits the continuation or settlement of the Fee Action, or an injunction prohibiting such action in its entirety while the Chapter 11 Cases are pending.  *Id.* at ¶¶ 22-26.

39.    In the absence of the relief requested by this Complaint, the Debtors believe that Defendant has contended or will contend that the automatic stay applies only to the Debtors in the Careismatic Matters and will attempt to continue prosecuting the Fee Action – and taking discovery upon the Debtors through the Fee Action instead.  Percy Declaration, ¶ 21.

---

[9]    A true and correct copy of the Correspondence with S. Michelman, dated January 23, 2024, is attached as Exhibit D to the Percy Declaration filed contemporaneously with this Complaint.

## CAUSES OF ACTION

## COUNT I

## Declaratory relief pursuant to section 362 of the Bankruptcy Code

40.    The Debtors incorporate by reference paragraphs 1 through 39 as if fully set forth herein.

41.    Section 362(a)(3) of the Bankruptcy Code prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" 11 U.S.C. § 362(a)(3).

42.    Section 541 of the Bankruptcy Code provides that the filing of a chapter 11 petition "creates an estate . . . comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a).

43.    Third Circuit precedent recognizes that claims (1) for which the debtor has standing to assert under applicable non-bankruptcy law and (2) that constitute "general claims" available to the debtor's other creditors are property of the debtor's bankruptcy estate.  *See In re Emoral, Inc.*, 740 F.3d 875, 879-82 (3d Cir. 2014) (holding that personal injury claimants' alter ego claims against transferee were property of the debtor's estate); *see also Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 613, 616 (D. Del. 2018).

44.    The Debtors have standing to pursue the alter ego claims or veil piercing claims under applicable non-bankruptcy law, whether the Court applies the substantive laws of Delaware or New Jersey.  *See*, *e.g. Harrison*, 320 F. Supp. 3d at 613, 617-27 (applying Delaware law and finding alter ego claim is a property of the bankruptcy estate); *Emoral*, 740 F.3d at 881 (applying New York and New Jersey law in holding that alter ego claims against the transferee were property of the estate).

15

45.     Furthermore, alter ego claims and piercing the corporate veil claims are "general claims" available to the Debtors' entire creditor body.  *See Harrison,* 320 F. Supp. 3d at 613, 616-27 (finding that an alter ego claim is a general claim under Delaware law) (citing *Emoral*, 740 F.3d at 879-81).

46.     Separately, the Debtors also have standing to seek an injunction against any actions in the Fee Action that implicate the Debtors' Indemnification Obligations to the Fee Defendants while the Chapter 11 Cases are pending because the Indemnification Obligations have a direct bearing on the administration of the estates and the estates' property.  Section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]"  11 U.S.C. § 362(a)(3).  "There is no question that the outcome of a lawsuit" that implicates the Debtors' Indemnification Obligations would "conceivably have [an] effect on the estate being administered in [this] bankruptcy case."  *In re Boy Scouts of Am. & Del. BSA, LLC,* 642 B.R. 504, 591 (Bankr. D. Del. 2022) (internal citations omitted); *see also New Jersey Dep't of Treasury, Div. of Inv. v Fuld,* CIV. 09-1629AET, 2009 WL 1810356, at *4 (D.N.J June 25, 2009) (holding the indemnification agreement "likely to have an impact on the [debtor's] bankruptcy estate.").

47.     Furthermore, the continuation of the Fee Action will also decrease the available D&O Insurance Coverage as the cost of defense comes out of the D&O limits, thus further impacting the estate.  *See In re LTL Management, LLC*, 638 B.R. at 303 ("[I]t remains uncontested that Debtor shares insurance policies—which are estate property under 11 U.S.C. § 541(a)—with the Protected Parties.").  Therefore, the continued litigation of the Fee Action against the Fee Defendants "has a conceivable effect on the bankruptcy estate because it effectively seeks to

collect and liquidate claims against Debtor and could deplete available insurance coverage." *Id.* (internal citations and quotations omitted).

48.     Finally, as previously stated, an investigation is currently being conducted by the Transaction Committees to investigate potential estate causes of action.  The discovery being sought upon Careismatic Brands, LLC in the Fee Action seeks to potentially and improperly impact the Transaction Committees' investigation into claims which would be of a general nature available to all the Debtors' creditors and which are a property of the Debtors' bankruptcy estates.

49.     Accordingly, and in line with Third Circuit precedent, the Fee Action is automatically stayed under section 362(a)(3) of the Bankruptcy Code because any attempt by Defendant to continue prosecution of any claims against the Fee Defendants while the Chapter 11 Cases are pending constitutes an act to control property of the Debtors' estates.

**WHEREFORE**, the Debtors respectfully request that this Court: (a) after notice and a hearing, enter an order and judgment declaring that the continued prosecution or settlement of the Fee Action by Defendant while the Chapter 11 Cases remain pending violates the automatic stay imposed by section 362(a)(3) of the Bankruptcy Code; and (b) grant such other and further relief as the Court may deem proper.

## COUNT II

### Extension of the Automatic Stay to Fee Action to the Extent Such Claims are not Automatically Stayed Pursuant to Section 362(a)(3)

50.     The Debtors incorporate by reference paragraphs 1 through 49 as if fully set forth herein.

51.     Section 362(a)(1) of the Bankruptcy Code prohibits the "commencement or continuation . . . of a judicial . . . proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against

the debtor that arose before the commencement of the case under this title[.]" 11 U.S.C.
§ 362(a)(1).

52.     Third Circuit precedent recognizes that the automatic stay imposed by section
362(a)(1) extends to enjoin actions against non-debtors in "unusual circumstances" such as where
"(i) the non-debtor and debtor enjoy such an identity of interests that the suit of the non-debtor is
essentially a suit against the debtor; or (ii) the third-party action will have an adverse impact on
the debtor's ability to accomplish reorganization." *In re Philadelphia Newspapers, LLC*, 407 B.R.
606, 616 (E.D. Pa. 2009); *see also McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 510 (3d Cir.
1997).

53.     There exists an identity of interest between the Debtors and the Fee Defendants
with respect to the Fee Action such that the Court's extension of the automatic stay is warranted.
The Fee Action is legally and factually predicated on the Debtors' property or operations, including
its fee arrangements with the Fee Defendants, such that the Debtors are the *de facto* defendants in
the Fee Action.     Furthermore, pursuant to the RSA, the Debtors are bound by certain
indemnification obligations that will be triggered in the event of the continuation of the Fee Action.
*See* Restructuring Support Agreement at p. 79.

54.     In the January 23 Response, Mr. Michelman asserted that the First Amended
Complaint "never alleged alter-ego".     Correspondence with S. Michelman.     However, "the
controlling consideration is not whether the claims are specifically pled as alter-ego claims, or
even whether they would succeed as alter-ego claims, but rather whether they are in the nature of
alter-ego claims at all." *In re Mee Apparel, LLC*, 2016 WL 3535805, at *6 (D.N.J. June 28, 2016).

55.     As demonstrated in the examples provided in the January 23 Letter, Defendant has
actively advanced veil piercing and alter ego theories in asserting that the Fee Defendants are alter

egos of the Debtors throughout the entirety of the Fee Action. *See* Letter to Kim re Automatic Stay.

56.     Furthermore, regardless of whether alter ego claims are being pled in the Fee Action, the Fee Action necessarily implicates the Debtors and their financial means due to the Indemnification Obligations.

57.     As a result, litigating the Fee Action is essentially an action brought against the Debtors.  The prosecution of the Fee Action also triggers indemnification and similar obligations of the Debtors owed to certain of the Fee Defendants.  Because the Debtors are the real-party defendants in any suit seeking to liquidate and recover on account of the claims raised in the Fee Action, section 362(a)(1) stays the entire lawsuit.

58.     Absent the relief sought herein, the Debtors would be compelled to defend their interests in the Fee Action to prevent such harm to the estates, thereby defeating the "breathing spell" intended by the automatic stay.  This is particularly true where the Careismatic Matters, which substantially overlap with the same issues underlying the Fee Action, have been automatically stayed, and allowing the Fee Action to continue would effectively circumvent the automatic stay afforded to the Careismatic Matters during the pendency of the Chapter 11 Cases.

59.     The continuation and any potential piecemeal settlement of the Fee Action would divert funds and resources to the Debtors' defense costs and reduce funds available for the restructuring efforts in the chapter 11 cases.

60.     Accordingly, the "unusual circumstances" of these cases warrant the Court's extension of the automatic stay to the Fee Action to the extent such claims are not automatically stayed as requested in Count I.

**WHEREFORE**, the Debtors respectfully request that this Court:  (a) after notice and a hearing, enter an order and judgment extending the automatic stay to prohibit the continuation or settlement of any action by Defendant seeking to hold the Fee Defendants liable for any claims in the Fee Action to the extent such action is not automatically stayed as requested in Count I; and (b) granting such other and further relief as the Court may deem proper.

## COUNT III

### Preliminary Injunctive Relief, Pursuant to Sections 105 and 362 of the Bankruptcy Code

61.     The Debtors incorporate by reference paragraphs 1 through 60 as if fully set forth herein.

62.     Section 105(a) of the Bankruptcy Code authorizes and empowers this Court to issue any order that will further the purposes and goals of the Bankruptcy Code, assist in the orderly and effective administration of the Chapter 11 Cases, aid in the preservation of the assets of the Debtors' estates, and aid in the formulation and confirmation of a chapter 11 plan that maximizes recovery to all of the Debtors' creditors.

63.     Pursuant to sections 105(a) and 362 of the Bankruptcy Code, this Court may enjoin creditor actions against third parties to prevent an adverse impact on the Debtors' estates or to assure the orderly administration of these Chapter 11 Cases, including by fully effectuating the protections of the automatic stay.  An injunction is appropriate in this case to prohibit Defendant from continuing or settling Fee Action while the Chapter 11 Cases are pending.  Further, such an injunction is critical to the Debtors' ability to achieve the purposes for which it commenced the Chapter 11 Cases.

64.     In the Third Circuit, courts considering the propriety of an injunction under section 105(a) apply the traditional four-factor test for injunctions, as tailored to the unique circumstances of bankruptcy.  In bankruptcy, these four factors are: (i) the Debtors' reasonable likelihood of

successful reorganization; (ii) the imminent risk of irreparable harm to the Debtors' estates in the absence of an injunction; (iii) the balance of harms between the Debtors and their creditors; and (iv) whether the public interest weighs in favor of an injunction.

65.    "In considering a request for an injunction, these four factors are not weighed simultaneously against one another. Rather, the Court determines whether the first two threshold prongs are established, and if so, only then does it proceed to consider the third and fourth factors." *In re Philadelphia Newspapers*, LLC, 423 B.R. 98, 106 n.11 (E.D. Pa. 2010).

66.    The Debtors are likely to prevail on the merits of their request for an injunction under applicable Third Circuit law. First, the Debtors' prospects for a successful outcome in the Chapter 11 Cases are strong. The Debtors have entered into an RSA that charts a clear and value-maximizing path forward for the Company during the Chapter 11 Cases and beyond. First Day Declaration, ¶ 17; Restructuring Support Agreement.

67.    Second, the failure to grant the requested injunction would irreparably harm the Debtors. Absent the requested injunction, Defendant would be permitted to pursue the Fee Action belonging to the Debtors' estates, the alleged value of which should be recovered for the benefit of all of the Debtors' creditors.

68.    Moreover, the resolution of the Fee Action would give rise to indemnification claims against the Debtors. Permitting Defendant to indirectly establish claims against the Debtors through actions against third parties with indemnity rights would undermine the breathing spell and bankruptcy protections afforded in chapter 11 cases.

69.    To avoid these types of risks, the Debtors would be compelled to expend valuable resources participating and defending against the Fee Action. This would undermine the purpose of the automatic stay.

70.     Third, the balance of the harms weighs heavily in favor of the requested injunction because prosecution of the Fee Action outside of the bankruptcy litigation would cause irreparable harm to the Debtors and their estates by expending valuable resources at a time when the Debtors are focused on their value-maximizing path forward, and creates a risk of a judgment that would impact the Debtors.  It would also compromise the protections of the automatic stay.

71.     On the other hand, the harm, if any, that an injunction might cause Defendant is minimal, to the extent it would exist at all.  The issuance of an injunction will not permanently deprive Defendant of an opportunity to pursue the Fee Action.  Instead, it will merely halt any claims during the pendency of these Chapter 11 Cases.

72.     Accordingly, an injunction barring the continuation and/or settlement of the Fee Action while the Chapter 11 Cases are pending is appropriate and essential to the orderly and effective administration of the Debtors' estates.  Good cause exists for the entry of injunctive relief pursuant to sections 105(a) and 362(a) of the Bankruptcy Code and Bankruptcy Rule 7065.

**WHEREFORE**, the Debtors respectfully request that this Court: (a) after notice and a hearing, issue a preliminary injunction pursuant to sections 105 and 362 of the Bankruptcy Code prohibiting the continued prosecution and potential settlement of the Fee Action while the Chapter 11 Cases are pending; and (b) grant such other and further relief as the Court may deem proper.

## COUNT IV

### Declaratory relief pursuant to section 541 of the Bankruptcy Code

73.     The Debtors incorporate by reference paragraphs 1 through 72 as if fully set forth herein.

74.     The Fee Action seeks to exercise control over property of the Debtors' estates for the reasons set forth in Count I above.  Accordingly, the Debtors have sole standing to pursue the claims in the Fee Action while the Chapter 11 Cases are pending.  *In re Wilton Armetale, Inc.*, 968

F.3d 273, 280 (3d Cir. 2020) ("[O]nce a cause of action becomes the estate's property, the Bankruptcy Code gives the trustee, and only the trustee, the statutory authority to pursue it.").

      **WHEREFORE**, the Debtors respectfully request that this Court: (a) after notice and a hearing, enter an order and judgment declaring that the Fee Action improperly seeks to exercise control over the property of the applicable Debtors' estates; and (b) grant such other and further relief as the Court may deem proper.

Dated:  February 20, 2024

*/s/ Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:    msirota@coleschotz.com
          wusatine@coleschotz.com
          fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: jsussberg@kirkland.com

-and-

Chad J. Husnick, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: chusnick@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

## VERIFICATION

I, Kent Percy, hereby certify:

I am the Chief Restructuring Officer of the Debtors and a Partner & Managing Director of AlixPartners, LLC ("**AlixPartners**"), the Debtors' restructuring advisor.  As Chief Restructuring Officer, I am generally familiar with the Debtors' historical businesses, financial condition, policies and procedures, claims management operations, books and records, and Chapter 11 Cases, as well as the Careismatic Matters asserted against the Debtors and Fee Action asserted against the Fee Defendants.  I have read the Complaint[10] and certify that the factual allegations contained in the Complaint are true to the best of my knowledge, information, and belief.

I certify that the foregoing statements are true.  I am aware that if any statement made herein is willfully false, I am subject to punishment.

Dated:  February 20, 2024                    */s/ Kent Percy*_____
                                             Kent Percy
                                             Chief Restructuring Officer
                                             Careismatic Brands, LLC

---

[10]  Capitalized terms used but not defined in this Verification shall have the meanings ascribed to such terms in the Complaint to which this Verification is attached.