**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
jsussberg@kirkland.com

Chad J. Husnick, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
chusnick@kirkland.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489 3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co Counsel to the Debtors*
*and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>CAREISMATIC BRANDS, LLC, *et al.*,<br><br>        Debtors.[1] | Case No. 24-10561 (VFP)<br><br>(Jointly Administered)<br><br>Chapter 11 |
| CAREISMATIC BRANDS, LLC, et al.,<br><br>        Plaintiffs,<br><br>        v.<br><br>MICHELMAN & ROBINSON, LLP,<br><br>        Defendant. | Adv. Proc. No. 24-01086 |

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.donlinrecano.com/careismatic.  The location of Debtor Careismatic Brands, LLC's principal place of business and the Debtors' service address in these Chapter 11 Cases is:  1119 Colorado Avenue, Santa Monica, California 90401.

**NOTICE OF HEARING ON DEBTORS' MOTION FOR DECLARATORY AND INJUNCTIVE RELIEF (I) CONFIRMING THAT THE AUTOMATIC STAY EXTENDS TO THE FEE ACTION; AND, IN THE ALTERNATIVE, (II) PRELIMINARILY ENJOINING THE FEE ACTION DURING THE PENDENCY OF THESE CHAPTER 11 CASES**

**PLEASE TAKE NOTICE** that on **March 14, 2024 at 2:30 p.m. (ET)**, or as soon thereafter as counsel can be heard, the above-captioned debtors and debtors-in-possession (the "**Debtors**") by and through their undersigned proposed counsel, shall move (the "**Motion**") before the Honorable Vincent Papalia, Martin Luther King Jr. Federal Building and United States Courthouse, 50 Walnut Street, Courtroom 3B, Newark, New Jersey 07102 (the "**Bankruptcy Court**"), for entry of an Order confirming that the automatic stay extends to the Fee Action (as defined in the Motion) or, in the alternative, preliminarily enjoining the Fee Action during the pendency of the Chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that the Motion and Declaration of Kent Percy, Chief Restructuring Officer of Careismatic Brands set forth the relevant legal and factual bases upon which the relief requested therein should be granted.  A proposed order granting the relief requested in the Motion is also submitted herewith.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Motion shall:  (i) be in writing, (ii) state with particularity the basis of the objection; and (iii) be filed with the Clerk of the Bankruptcy Court electronically by attorneys who regularly practice before the Bankruptcy Court in accordance with the (a) *Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 70] (the "**Case Management Order**") and (b) *General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002* (the "**General Order**") and the *Commentary Supplementing Administrative Procedures* dated as of March 2004 (the

2

"**Supplemental Commentary**") (the General Order, the Supplemental Commentary, and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties-in-interest, on CD-ROM in Portable Document Format (PDF), and shall be served in accordance with the Case Management Order, the General Order and the Supplemental Commentary, so as to be received no later than seven (7) days before the hearing date set forth above.

  **PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these Chapter 11 Cases may be obtained free of charge by visiting the website of Donlin Recano & Company at https://www.donlinrecano.com/Clients/cbi/Index.   You may also obtain copies of any pleadings by visiting the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

  **PLEASE TAKE FURTHER NOTICE** that, unless responses are timely and properly filed and served, the Motion shall be decided on the papers in accordance with D.N.J. LBR 9013-3(d), and the relief requested may be granted without further notice or hearing.

*[Remainder of Page Intentionally Left Blank.]*

Dated:  February 22, 2024

/s/ *Michael D. Sirota*
_____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:     msirota@coleschotz.com
           wusatine@coleschotz.com
           fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:       jsussberg@kirkland.com

-and-

Chad J. Husnick, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:       chusnick@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

4

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
jsussberg@kirkland.com

Chad J. Husnick, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
chusnick@kirkland.com

*Proposed Co-Counsel for Debtors and
Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>CAREISMATIC BRANDS, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-10561 (VFP)<br><br>(Jointly Administered) |
| CAREISMATIC BRANDS, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MICHELMAN & ROBINSON, LLP,<br><br>                         Defendant. | Adv. Proc. No. 24-01086<br><br><br><br>**Hearing Date:  March 14, 2024 at 2:30 p.m.** |

**DEBTORS' MOTION FOR DECLARATORY AND INJUNCTIVE RELIEF (I)
CONFIRMING THAT THE AUTOMATIC STAY EXTENDS TO THE FEE ACTION;
AND IN THE ALTERNATIVE,  (II) PRELIMINARILY ENJOINING THE FEE ACTION
DURING THE PENDENCY OF THESE CHAPTER 11 CASES**

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.donlinrecano.com/careismatic. The location of Debtor Careismatic Brands, LLC's principal place of business and the Debtors' service address in these Chapter 11 Cases is: 1119 Colorado Avenue, Santa Monica, California 90401.

# <u>TABLE OF CONTENTS</u>

**Page**

NATURE OF THE ACTION ................................................................................. 1

JURISDICTION AND VENUE ........................................................................... 3

FACTUAL BACKGROUND ............................................................................... 4

    I.      Overview of the Debtors ................................................................ 4

    II.     The Careismatic Matters ............................................................. 6

    III.    The Fee Action ............................................................................ 6

    IV.    The Chapter 11 Cases ................................................................. 10

    V.     The Need for the Requested Relief .............................................. 11

ARGUMENT ..................................................................................................... 14

    I.      The Court has Subject Matter Jurisdiction to Issue the Requested
          Injunction ................................................................................... 14

    II.     The Automatic Stay Should Extend to the Fee Action Pursuant to Section
          362(a) of the Bankruptcy Code ................................................... 16

    III.    The Court Should Exercise its Authority Under Section 105(a) of the
          Bankruptcy Code to Enjoin the Continuation and Settlement of the Fee
          Action Outside of these Chapter 11 Cases ................................... 18

          A.    A Successful Outcome in the Chapter 11 Cases is Likely ........ 21

          B.    Failure to Enjoin Litigation of Fee Action Would Irreparably Harm
               the Debtors .......................................................................... 22

          C.    The Irreparable Harm that the Debtors Would Suffer in the
               Absence of an Injunction Substantially Outweighs Any Prejudice
               to Defendant ......................................................................... 23

          D.    The Public Interest Favors the Requested Injunction .............. 24

NOTICE .............................................................................................................. 25

CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp.*,
   682 F.2d 446 (3d Cir. 1982)...................................................................................10

*In re Bestwall LLC*,
   606 B.R. 243 (Bankr. W.D.N.C. 2019)............................................................21, 24

*In re Bldgs. by Jamie, Inc.*,
   230 B.R. 36 (Bankr. D.N.J. 1998) ....................................................................20

*In re Boy Scouts of Am. & Del. BSA, LLC*,
   642 B.R. 504 (Bankr. D. Del. 2022) .................................................................19

*In re Emoral, Inc.*,
   740 F.3d 875 (3d Cir. 2014)............................................................................17

*Halper v. Halper*,
   164 F.3d 830 (3d Cir. 1999)............................................................................15

*Harrison v. Soroof Int'l, Inc.*,
   320 F. Supp. 3d 602 (D. Del. 2018)...........................................................17, 20

*In re Johns-Manville Corp.*,
   26 B.R. 420 (Bankr. S.D.N.Y. 1983), *aff'd*, 40 B.R. 219 (S.D.N.Y. 1984), *and
   appeal allowed, decision vacated in part on other grounds*, 41 B.R. 926
   (S.D.N.Y. 1984) .............................................................................................18

*In re Johns-Manville Corp.*,
   40 B.R. 219 (S.D.N.Y. 1984)..........................................................................18

*In re Lazarus Burman Assocs.*,
   161 B.R. 891 (Bankr. E.D.N.Y 1993).............................................................24

*In re LTL Management, LLC*,
   638 B.R. 291 (Bankr. D.N.J. 2022) .......................................................... *passim*

*In re LTL Mgmt., LLC*,
   640 B.R. 322 (Bankr. D.N.J. 2022) .................................................................22

*LTL Mgmt., LLC v. Those Parties Listed on Appendix A to Complaint*,
   Case No. 21-20252 (FLW), 2022 WL 190673 (D.N.J. Jan. 21, 2022).......21, 22, 23

*Maertin v. Armstrong World Industries, Inc.*,
   241 F. Supp. 2d 434 (D.N.J. 2002) .................................................................16

*In re Mallinckrodt*
  *plc*, No. AP 20-50850-JTD, 2021 WL 5275781, at *2 (D. Del. Nov. 10, 2021)....................17

*McCartney v. Integra Nat'l Bank North*,
  106 F.3d 506 (3d Cir. 1997)....................................................................................16

*In re Mee Apparel, LLC*,
  No. 15-5697 (FLW), 2016 WL 3535805 (D.N.J. June 28, 2016)...........................17

*In re Mountain Laurel Res. Co.*,
  210 F.3d 361 (4th Cir. 2000) ................................................................................18

*Myerson & Kuhn v. Brunswick Assocs. Ltd. P'ship (In re Myerson & Kuhn)*,
  121 B.R. 145 (Bankr. S.D.N.Y 1990)....................................................................21

*New Jersey Dep't of Treasury, Div. of Inv. v Fuld*,
  CIV. 09-1629AET, 2009 WL 1810356 (D.N.J June 25, 2009) ..............................19

*In re Philadelphia Newspapers, LLC*,
  423 B.R. 98 (E.D. Pa. 2010) ...........................................................................18, 20

*Philadelphia Newspapers*,
407 B.R. 606 (E.D. Pa. 2009) ..........................................................................18, 20

*In re Sudbury, Inc.*,
  140 B.R. 461 (Bankr. N.D. Ohio 1992)...................................................................24

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*,
  309 F.3d 144 (3d Cir. 2002)....................................................................................20

*In re VistaCare Grp., LLC*,
  678 F.3d 218 (3d Cir. 2012)....................................................................................18

*In re W.R. Grace & Co.*,
  386 B.R. 17 (Bankr. D. Del. 2008) ............................................................... *passim*

*In re Winstar Commc'ns, Inc.*,
  554 F.3d 382 (3d Cir. 2009)....................................................................................15

## Statutes

11 U.S.C. § 105(a) ...................................................................................... *passim*

11 U.S.C. § 362 ........................................................................................... *passim*

11 U.S.C. § 541(a) ...............................................................................17, 19, 20

11 U.S.C. § 1107(a) .............................................................................................10

i

11 U.S.C. § 1108 .................................................................................................................10

28 U.S.C. § 157 .....................................................................................................................3

28 U.S.C. § 1334 ..............................................................................................................3, 14

28 U.S.C. § 1409 ...................................................................................................................3

**Rules**

D.N.J. Local Bankr. R. 7065-1 ..........................................................................................1, 4

Fed. R. Bankr. P. 1015(b) ...................................................................................................10

Fed. R. Bankr. P. 7001(7) ..................................................................................................1, 4

Fed. R. Bankr. P. 7008 .........................................................................................................3

Fed. R. Bankr. P. 7065 ......................................................................................................1, 4

TO THE HONORABLE VINCENT F. PAPALIA,
UNITED STATES BANKRUPTCY COURT:

Careismatic Brands, LLC ("CBI") and its debtor affiliates (together with CBI, the "**Debtors**" or "**Plaintiffs**"), as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**") and plaintiffs in the above-captioned adversary proceeding (this "**Adversary Proceeding**"), by and through their undersigned counsel, hereby submit this motion (the "**Motion**")—pursuant to sections 105(a) and 362(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 7001(7) and 7065 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 7065-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "**Local Rules**")—for entry of an Order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), extending the Bankruptcy Code's automatic stay to the Fee Action (as defined below), and in the alternative, enjoining the continuation and settlement of the Fee Action while the Chapter 11 Cases remain pending.  In support of this Motion, the Debtors incorporate the February 20, 2024 *Declaration of Kent Percy, Chief Restructuring Officer of Careismatic Brands, LLC*, filed contemporaneously with the Complaint (the "**Percy Declaration**"), which incorporates the *Amended Declaration of Kent Percy, Chief Restructuring Officer of Careismatic Brands, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 33] (the "**First Day Declaration**"), and further respectfully state as follows:

## NATURE OF THE ACTION

1.     The Debtors are the leading designer, marketer, and distributor of medical apparel, footwear, and accessories.  After years of operational and financial challenges caused by market headwinds, shifting consumer preferences, and material ongoing litigation, the Debtors commenced these Chapter 11 Cases under the Bankruptcy Code on January 22, 2024.  Through

these cases, the Debtors intend to effectuate the comprehensive recapitalization transaction embodied in the Restructuring Support Agreement ("**RSA**") and to emerge with a stronger balance sheet and greater financial flexibility as they continue serving their customers in the medical field. First Day Declaration, ¶ 17.  The Debtors also intend to use the Chapter 11 process to resolve some of their most costly and burdensome prepetition litigation.

2.     Amongst the most vexing of these prepetition disputes are a series of lawsuits and arbitrations arising from an unsuccessful representation of the Debtors by their former outside counsel, Michelman & Robinson, LLP ("**M&R**" or "**Defendant**").  M&R's unsuccessful litigation efforts on behalf of the Debtors, and the resulting disputes over M&R's fees, have spawned both (i) litigation and arbitration between the Debtors and M&R (the "**Careismatic Matters**")[1]; and (ii) litigation by M&R against non-Debtors (the "**Fee Action**")[2], including the Debtors' Sponsor (as defined below), former CEO, Girisha Chandraraj, and Chairman of the Board, Michael Penner (the "**Fee Action Defendants**").

3.     The Debtors' disputes with M&R—an aggressive law firm with significant knowledge of the Debtors' business and connections to former management—have inflicted significant expense, burden, and distraction on the Debtors.  Indeed, ongoing litigation expense burden—through both fees incurred in the Careismatic Matters and indemnity obligations owed to certain defendants in the Fee Action—were a significant strain on the Debtors' prepetition liquidity.

---

[1]   The Careismatic Matters refer to the matters captioned *Michelman & Robinson, LLP v. Careismatic Brands, Inc. f/k/a Strategic Partners, Inc.*, ADRS Inquiry No. 40826; *Michelman & Robinson, LLP v. Careismatic Brands, LLC*, Los Angeles County Superior Court Case No. 23STCV12186; *Careismatic Brands v. Michelman & Robinson, LLP et al.*, Los Angeles County Superior Court Case No. 23STCV30066.

[2]   The Fee Action refers to the matter captioned *Michelman & Robinson, LLP v. Partners Group et al.*, Los Angeles Superior Court Case No. 23STVC05652.

4.      While the automatic stay resulting from the filing of these Chapter 11 Cases has provided the Debtors a much-needed breathing spell in the Careismatic Matters, the same cannot be said of the Fee Action.  Since the Petition Date, Defendant M&R has continued to aggressively press and pursue its claims in the Fee Action.  Indeed, absent a determination that the automatic stay applies or should be extended to the Fee Action, the Debtors' efforts to successfully reorganize will be hampered, as the costs, burden, and distractions from the Fee Action continue to mount.

5.      Accordingly, as set forth herein, this Court should find that the automatic stay under 11 U.S.C. § 362(a) extends to the Fee Action—including because the Fee Action implicates the Debtors' indemnification obligations and Director & Officer ("**D&O**") Insurance Coverage that are property of the Debtors' estates, and because alter ego and veil-piercing theories asserted in the Fee Action overlap with the investigation of estate claims by the Debtors' Transaction Committees (as defined below)—and enjoin M&R from further prosecution of the Fee Action during the pendency of these Chapter 11 Cases.  In the alternative, the Court should employ its powers pursuant to 11 U.S.C. § 105(a) to stay the Fee Action during the pendency of these Chapter 11 Cases given that the Fee Action plainly threatens the success of these Chapter 11 Cases.

6.      For these reasons, and those set forth in the sections below and the supporting Percy Declaration, the Court should grant this Motion and enter the Proposed Order following the March 14, 2024 hearing.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this Adversary Proceeding and this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Pursuant to Bankruptcy Rule 7008, the Debtors consent to the entry of final orders or a final judgment by this Court in this Adversary Proceeding.

8.      Venue of this proceeding is proper in this District pursuant to 28 U.S.C. § 1409.

3

9.      The statutory predicates for the relief requested herein are sections 105(a) and 362(a) of the Bankruptcy Code, Bankruptcy Rules 7001(7) and 7065, and Local Rule 7065-1.

## FACTUAL BACKGROUND

### I.      Overview of the Debtors

10.     The Debtors and their predecessors in interest were founded in 1995, and have grown from operating a single flagship brand, Cherokee Medical Uniforms, to a portfolio of seventeen brands.  First Day Declaration, ¶ 7.  The Debtors are the market leader in the $3 billion domestic medical scrubs industry, with dominant positions in the wholesale and online marketplace segments.  *Id.*  As their business has expanded over the years, the Debtors have continued to support caretakers and healthcare workers in delivering high-quality patient care in approximately 65 countries around the world.  *Id.* at ¶ 8.

11.     The COVID-19 pandemic highlighted the Debtors' mission—finding new ways to elevate healthcare professionals by providing high-quality apparel and personal protective equipment—and how this mission remains central to the Company's growth.  *Id.* at ¶ 9.  The pandemic led to sharp increases in medical apparel demand, validating the Company's investments into new brands, technologies, and manufacturing capacity.  *Id.*  This confluence of factors led to record-setting revenue for the Debtors in both 2020 and 2021, with revenue growing to $687 million in 2021 (approximately 38% greater than the $498 million in revenue posted in 2019).  *Id.*

12.     Despite this success, operational and financial factors have stressed the Company's financial condition over the last two years, and ultimately necessitated this restructuring.  *Id.* at ¶ 10.  While the Debtors expanded capacity to meet market demand in 2020 and 2021, demand has normalized to its historical trendline in 2022 and 2023.  *Id.*  Macroeconomic issues, including a rapid and dramatic rise in interest rates, persistent supply chain disruptions, rising material costs, and a challenging labor market exacerbated a significantly weaker industry-wide demand.  *Id.*  The

4

Debtors have also faced pressure from increased competition and a shift in consumer purchasing preferences.  *Id.* at ¶ 11.

13.     While the Debtors anticipate significant growth and improved net margins from their burgeoning direct-to-consumer and online marketplace segments over the next five years, the Company remains in a trough period as it restructures its legacy business and online businesses. *Id.* at ¶ 11.

14.     Furthermore, in addition to market headwinds and the challenges posed by rapidly shifting consumer preferences, material ongoing litigation has posed unsustainable liquidity challenges to the Debtors.  *Id.* at ¶ 12.

15.     In an effort to address the significant headwinds and liquidity challenges facing the Company following the COVID-19 pandemic, in October 2022, investment vehicles managed or advised by Partners Group (USA) Inc. and its affiliates (collectively, the "**Sponsor**"), provided the Company with a much-needed infusion of capital in the form of the approximately $30 million unsecured Sponsor PIK Notes.[3]  *Id.* at ¶ 13.  In addition to the Sponsor PIK Notes, beginning in late 2023, an affiliate of the Sponsor, party to that certain Services Agreement with the Company, dated as of January 6, 2021 (the "**Services Agreement**"), determined in effort to help preserve the Company's liquidity, it would defer reimbursement of certain expenses to which it is entitled under the Services Agreement, and defer and accrue the management fees due and owing pursuant to the Services Agreement, resulting in additional liquidity for the Company.  *Id.*  Despite the Sponsor's material contributions and concessions, however, the market challenges and legacy obligations facing the Company persisted and have required additional action and contingency planning.  *Id.*

---

[3]     The Sponsor PIK Notes were approved by the Company after the board of directors of CBI Parent, L.P. and Careismatic Brands, Inc. were informed of the Sponsor PIK Notes' terms, the Company's liquidity situation, and the availability of alternative financing from other sources.

16.     Over the last eighteen months, the Company has also undergone a major operational restructuring, replacing the vast majority of its executive team, as the Company works to reduce its cost structure and execute on its long-term roadmap for omnichannel growth.  *Id.* at ¶ 14.

17.     Over the past two months, the Company, with the assistance of their advisors and support and cooperation of the Sponsor, engaged in detailed turnaround discussions and hard-fought negotiations that ultimately resulted in a go-forward restructuring plan that charted a clear and value-maximizing path forward for the Company during the Chapter 11 cases and beyond.  *Id.* at ¶ 17.

## II.     The Careismatic Matters

18.     Defendant M&R previously represented the Debtors in multiple litigation matters, billing Careismatic entities approximately $39 million in fees from 2012 until the end of 2022. The bulk of these fees arose from M&R's representation in *Strategic Partners, Inc. v. FIGS, Inc., et al.*, United States District Court, Central District of California, Case No. 2:19-cv-02286-JWH-KSx (the "**FIGS case**").  In that matter alone, M&R billed the Debtors over $31 million, yet the Debtors ultimately suffered a significant loss after a jury returned a complete defense verdict.

19.     Following the loss in the FIGS case, a fee dispute arose between M&R and the Debtors related to M&R's billing.  This fee dispute has been heavily and aggressively litigated by M&R through several different proceedings, including the Careismatic Matters.  But for the automatic stay, continued litigation of the Careismatic Matters would consume an enormous amount of the Debtors' remaining resources while the Debtors are attempting in good faith to focus on their restructuring efforts.  First Day Declaration, ¶ 12; Percy Declaration, ¶¶ 14-16.

## III.     The Fee Action

20.     In connection with the Careismatic Matters, M&R is currently pursuing claims in the Fee Action, filed on March 14, 2023 in the Superior Court of California for the County of Los

Angeles, against the Fee Action Defendants.  The Fee Action arises out of the exact same fee dispute that has been heavily litigated in the Careismatic Matters and relates to M&R's representation of Careismatic Brands, LLC in the FIGS case.  At its core, M&R claims that the Fee Action Defendants falsely represented that they would authorize payment of M&R's invoices to CBI in connection with the FIGS case, and that they would "stand behind" CBI's payment of these invoices.  Percy Declaration, ¶ 17.

21.    The fees incurred and exposure faced by the Fee Action Defendants in defending these claims are significant.  The continuation of the Fee Action will decrease the available D&O Insurance Coverage as the cost of defense comes out of the D&O limits, thus impacting the Debtors' estates.  Percy Declaration, ¶ 24.  Moreover, governing and/or services agreement documents of certain of the Debtors provide the Fee Action Defendants with indemnification rights that may be implicated by the claims asserted by M&R in the Fee Action (the "**Indemnification Obligations**").  Pursuant to the RSA, the Debtors will assume all Indemnification Obligations, including any obligations of the Debtors to indemnify "current and former officers, directors, partners, managers, members, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such directors, officers, managers, members, partners, agents, or employees, based upon any act or omission for or on behalf of the Debtors".  Restructuring Support Agreement at p. 79.[4]  Attorneys' fees and other costs and expenses incurred by the Fee Action Defendants will therefore impact the Debtors under the terms of the RSA.

22.    In addition to fees and expenses imposed on the Debtors' D&O policies and by virtue of their Indemnification Obligations, Defendant has continued, on a post-petition basis, to

---

[4]    A true and correct copy of the Restructuring Support Agreement is attached as Exhibit A to the Percy Declaration filed contemporaneously with the Complaint.

seek burdensome discovery relating to the Debtors' relationship with the Fee Action Defendants throughout the Fee Action, including noticing the deposition of a Careismatic Brands, LLC corporate witness.  Defendant has also pursued other depositions in the Fee Action for which a Debtor representative had to attend to preserve their rights—including the deposition of Debtors' CEO and most recently a deposition of a Katten Muchin Rosenman LLP ("**Katten**") witness, co-counsel to Careismatic Brands, LLC in the FIGS case, on January 26, 2024 (the Katten deposition occurring after the Debtors commenced these Chapter 11 proceedings).  Percy Declaration, ¶ 19. Thus, the continuation of the Fee Action during the pendency of the Chapter 11 Cases would only serve to deplete significant funds from the Debtors' estates during this critical time and negate the safeguards established by the Bankruptcy Code's automatic stay.

23.     Additionally, as part of the Fee Action, among other theories, Defendant has been advancing veil-piercing and alter ego theories by asserting or implying that certain Fee Action Defendants are alter egos of the Debtors.  Examples of these assertions include the following:

- **January 3, 2024 Joint Submission to Judge Hogue, Discovery Referee**: "As noted, Plaintiff alleges that PG owns and controls CBI, including on a day-to-day basis. Plaintiff is informed and believes that Penner and the other PG employees and representatives on CBI's board kept Layton regularly informed concerning CBI and the FIGS Litigation and that Layton dictated that the CBI board be comprised of a majority of PG employees and representatives, that CBI discharge Michael Singer, CBI's founder and highly successful CEO for more than twenty years, and that PG refuse to authorize payment of Plaintiff's invoices for services and costs at issue in this case."

- **December 6, 2023 Deposition of Sanford Michelman:** "Aggregating this information, and as far as I look at it, it's all one in the same as I've testified all morning. Penner, Partners Group, that's what I said when they say the board. **That's synonymous with Partners Group**. You have Partner Group in e-mails and texts with us talking about our motions to file motions in limine. **It's actually CBI. They – Partners Group employees actually treat themselves as CBI.**  In fact, when Girisha Chandraraj was fired, they had a non- member, non-CBI – . . . And nonemployee person who was an employee of Partners Group fire him, unaffiliated. **That's how commingled these two are.**" (Tr. 303:3-20)

- **January 18, 2024 Deposition of Sid Lakhani:**

  - "Did you ever attend any other meetings of the CBI board that took place in PG's offices in Denver?" (Tr. 47:2-4)

  - "Do you have an understanding concerning the percentage of PG's stake in CBI?" (Tr. 50:11-12)

  - "During the times when you were working out of the Santa Monica offices of CBI, do you recall there being any individuals that you understood to be affiliated with PG that also worked out of those offices?" (Tr. 90:10-14)

  - "Do you have an understanding that after PG acquired CBI that PG installed various PG affiliated individuals on the board?" (Tr. 37:9-11)

24.     As yet another example, Defendant has alleged that Partners Group had the authority to "authorize payment" of CBI invoices, and that Partners Group's lawyer "serves as CBI's *de facto* general counsel."  First Am. Compl. ¶¶ 17, 19, 29.[5]

25.     Defendant's pursuit of these alter ego and veil-piercing theories in the Fee Action is not only distracting and burdensome to the Debtors in seeking to navigate liquidity risks and challenges (First Day Declaration, ¶ 12), but it plainly implicates potential claims and causes of action belonging to the Debtors' estates.  In fact, the Transaction Committees of CBI Parent, L.P. and CBI Intermediate, Inc. (the "**Transaction Committees**") are presently in the midst of investigating and analyzing potential causes of action belonging to the Debtors' estates. Defendant's pursuit of alter ego and veil-piercing theories in the Fee Action overlaps with the scope of the Transaction Committees' investigation and threatens to impact and impair that investigation.

---

[5]     A true and correct copy of the First Amended Complaint in *Michelman & Robinson, LLP v. Partners Group et al.*, Los Angeles County Superior Court Case No. 23STVC05652 is attached as Exhibit B to the Percy Declaration filed contemporaneously with the Complaint.

**IV.    The Chapter 11 Cases**

26.    The Debtors commenced these Chapter 11 Cases on January 22, 2024 (the

"**Petition Date**").  Percy Declaration, ¶¶ 4-5.  Since the Petition Date, the Debtors have operated

their businesses and managed their property as debtors in possession pursuant to sections 1107(a)

and 1108 of the Bankruptcy Code.  *Id.*  Concurrently with the Chapter 11 Cases, and as mentioned

in the First Day Hearing before this Court on January 24, 2024, an ongoing investigation has been

initiated by the Transaction Committees to investigate potential estate causes of action.   On

January 24, 2024, the Court entered an order [Docket No. 57] authorizing procedural consolidation

and joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

27.    The Debtors sought bankruptcy protection due to the ongoing costs and distractions

in remedying particular issues related to the lingering effect of the Debtors' legacy business model

and material ongoing litigation, particularly the Careismatic Matters and the Fee Action.  First Day

Declaration, ¶ 12; *see also* Percy Declaration, ¶ 6.

28.    The Debtors intend to use the breathing spell and other tools afforded by chapter

11 of the Bankruptcy Code to focus on their go-forward business plans to emerge from bankruptcy

well-positioned to remain the leader of the medical apparel market.  *See Assoc. of St. Croix Condo.

Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982) (noting that the automatic stay

"gives the debtor a breathing spell from his creditors.").

29.    On January 23, 2024, the Debtors' counsel sent a letter to Andrew F. Kim of Kim

Riley Law, counsel to Defendant in the Careismatic Matters and Fee Action, notifying him of the

Debtors' voluntary petitions for relief under title 11 of the United States Code, and informing

Defendant's counsel of the automatic stay of any actions against the Debtors, or any efforts to

exercise control over the Debtors or their property pursuant to section 362 of the Bankruptcy Code (the "**January 23 Letter**").  Letter to Kim re Automatic Stay.[6]

30.     While Defendant has respected the automatic stay with respect to the Careismatic Matters, having to defend against the Fee Action has already impacted and threatens to exhaust certain of the Debtors' assets.  Percy Declaration, ¶ 8.  The continuation of the Fee Action will also continue to decrease the available D&O Insurance Coverage, as the cost of defense comes out of the D&O limits, necessarily diminishing property of the estate.  *Id*. at ¶ 24.  Furthermore, any potential resolution in the Fee Action would have a significant financial impact on the Debtors through indemnification claims that may arise, including through any obligations to indemnify directors, officers, managers, members, partners, agents, or employees, based upon any act or omission for or on behalf of the Debtors.  *Id*. at ¶ 18; Restructuring Support Agreement at p. 79.

**V.**     **The Need for the Requested Relief**

31.     The declaratory and injunctive relief sought in this Motion is critical to the Debtors' ability to achieve a stay of the claims that precipitated the Debtors' bankruptcy filings, pursuant to section 362 of the Bankruptcy Code.  *See* 11 U.S.C. §§ 362(a)(1) (staying "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title"), (a)(3) (staying "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate").

---

[6]     A true and correct copy of the Letter to Kim re Automatic Stay is attached as Exhibit C to the Percy Declaration filed contemporaneously with the Complaint.

32.    The Fee Action is factually and legally predicated on the Debtors' operations, and involves the same underlying factual dispute as raised in the now-stayed Careismatic Matters. Yet despite the automatic stay, Defendant's continued prosecution of the Fee Action has and will continue to impact the Debtors during the pendency of these Chapter 11 Cases in multiple respects. Percy Declaration, ¶ 10. Accordingly, the Debtors require an injunction prohibiting such actions while the Chapter 11 Cases are pending. *See id.* at ¶¶ 22-26.

33.    Among other things, and as described herein, despite the automatic stay as to the Careismatic Matters, Defendant has used the Fee Action to seek the deposition of a Careismatic Brands, LLC's corporate witness regarding the fee dispute that is at the heart of the Careismatic Matters and has taken the deposition of Debtors' former counsel regarding Defendant's fee dispute with the Debtors. In other words, Defendant is using discovery in the Fee Action to circumvent the automatic stay imposed in the Careismatic Matters. Without immediate injunctive relief, the Debtors will be compelled to pull key estate resources and personnel away from the Chapter 11 Cases and instead devote them to the Fee Action. Percy Declaration, ¶ 22.

34.    In addition to this burden and distraction, the fees incurred and exposure faced by the Fee Action Defendants in defending M&R's claims will decrease the available D&O insurance coverage, impacting the Debtors' estates. Percy Declaration, ¶ 24. Moreover—and presenting perhaps the greatest impact on the Debtors from continued pursuit of the Fee Action—the Debtors owe certain indemnification obligations to the Fee Action Defendants in connection with the Fee Action, including to indemnify "directors, officers, managers, members, partners, agents, or employees, based upon any act or omission for or on behalf of the Debtors." Restructuring Support Agreement at p. 79. All of M&R's claims in the Fee Action are based on the association between the Fee Action Defendants and the Debtors. Percy Declaration, ¶ 23. Accordingly continued

litigation in that matter implicates the Debtors' Indemnification Obligations to the Fee Action Defendants while the Chapter 11 Cases are pending, and thus injunctive relief is appropriate.

35.     Moreover, as described above, the discovery that Defendant seeks in the Fee Action includes discovery squarely focused on veil-piercing and alter ego theories advanced by Defendant to support its claims in that litigation.  But those theories, whether viable or not, clearly implicate estate causes of action and fall within the scope of the investigation being conducted by the Transaction Committees in these Chapter 11 cases.  Defendant's pursuit of discovery on these theories during the pendency of these Chapter 11 Cases thus threatens to create dueling and overlapping factual records.  Indeed, any private discovery conducted by a single creditor involving Careismatic Brands, LLC that overlaps with the scope of the investigation being conducted by the Transaction Committees may impact the integrity of the investigation and would only serve to potentially harm the estate as a whole.

36.     The Debtors advised Defendant that pursuit of such theories following the filing of these Chapter 11 Cases would be a violation of the automatic stay under section 362(a) of the Bankruptcy Code.  Letter to Kim re Automatic Stay.  In response, however, Sanford L. Michelman, an attorney and named partner of M&R, simply responded that "We have never alleged alter-ego . . . Please note the stay does not apply to Klien [sic] & Wilson".  Correspondence with S. Michelman.   Klein & Wilson represents the Debtors in the Careismatic Matters and would represent the Debtors in the corporate witness deposition should it move forward in the Fee Action. Percy Declaration, ¶¶ 8, 19.

37.     To be clear, the Debtors do not seek relief on the merits with respect to the Fee Action.  But the continuation of the Fee Action during the pendency of these Chapter 11 Cases

would plainly divert key estate resources and harm the Debtors' efforts to emerge from bankruptcy in an expeditious manner to the benefit of all stakeholders.  Percy Declaration, ¶ 20.

## **ARGUMENT**

38.      The Bankruptcy Code provides protections for debtors to address litigation that, if allowed to continue, would jeopardize the debtor's restructuring.  Section 362(a)(3) automatically stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  In addition, where the application of the automatic stay is in dispute or is insufficient to protect the debtor's ability to reorganize, section 105(a) empowers bankruptcy courts to stay litigation that threatens to derail a successful restructuring. 11 U.S.C. § 105(a)

39.      Because the Fee Action threatens the Debtors' ability to successfully reorganize, the Court should issue (i) a declaration confirming that section 362(a) applies to the Fee Action and enjoining further violations of the automatic stay through pursuit of the Fee Action, and in the alternative, (ii) an order under section 105(a) enjoining the continued litigation of the Fee Action during the pendency of these Chapter 11 Cases.

## I.      **The Court has Subject Matter Jurisdiction to Issue the Requested Injunction**

40.      Section 1334 of title 28 of the U.S. Code provides that the Bankruptcy Court has subject matter jurisdiction over the following matters:  (i) cases under title 11; (ii) proceedings arising under title 11; (iii) proceedings arising in a case under title 11; and (iv) proceedings related to a case under title 11.  *See* 28 U.S.C. § 1334(b).

41.      Because the Debtors seek relief under both section 362 and section 105 of the Bankruptcy Code, this proceeding is "arising under title 11."  *See In re LTL Management, LLC,* 638 B.R. 291, 302 (Bankr. D.N.J. 2022) (finding that "courts have concluded that motions to extend an automatic stay and injunction to non-debtor third parties pursuant to sections 362 and

105 qualify as 'core' proceedings" conferring "arising under" jurisdiction) (internal citations and quotations omitted). Thus, this Court has "core" subject matter jurisdiction to extend an automatic stay and issue the injunction requested in this Motion and Adversary Proceeding.

42.    This Court also has "related to" jurisdiction over the Fee Action because the Fee Action "could conceivably have any effect on the estate being administered in bankruptcy." *In re Winstar Commc'ns, Inc*., 554 F.3d 382, 405 (3d Cir. 2009) (quoting *Halper v. Halper*, 164 F.3d 830, 837 (3d Cir. 1999)).  Notably, a cause of action asserted against a third-party has a direct impact on the bankruptcy estate when the debtor is required to indemnify the third-party for the litigation.  *In re W.R. Grace & Co*., 386 B.R. 17, 28 (Bankr. D. Del. 2008) (finding actions filed against a non-debtor directly impacted the bankruptcy estate because the debtor was obligated to indemnify the third party).

43.    Here, as described above, the continued prosecution and/or settlement of the Fee Action would negatively affect the Debtors' estates in a number of ways.  First, the Debtors will be required to divert key estate resources from these Chapter 11 Cases to participate in discovery in the Fee Action, including the deposition of a corporate witness.  Second, the continuation of the Fee Action also decreases the available D&O Insurance Coverage because the cost of defense comes out of the D&O limits, thus further impacting the Debtors' estates.  Third, pursuant to the Indemnification Obligation, certain parties may have indemnification rights against the Debtors that will be implicated in the event of the continuation of the Fee Action.  Fourth, the continued prosecution of the Fee Action will impact and impair the investigation being conducted by the Debtors' Transaction Committees. Accordingly, the Court plainly has subject matter jurisdiction to order the requested relief sought by this Motion.

## II.    The Automatic Stay Should Extend to the Fee Action Pursuant to Section 362(a) of the Bankruptcy Code

44.    The Court should issue a declaration that the automatic stay extends to the Fee Action because the Fee Action implicates certain Indemnification Obligations and D&O insurance coverage that are property of the Debtors' estates.  Moreover, alter ego and veil-piercing theories asserted in the Fee Action implicate and overlap with the investigation of estate claims currently underway by the Debtors' Transaction Committees.    The automatic stay afforded by the Bankruptcy Code prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  The Fee Action improperly seeks to exercise control over property of the Debtors' estates.

45.    The Third Circuit in *McCartney v. Integra Nat'l Bank North* upheld an extension of the stay to a non-debtor solely on the basis of section 362 where, as here, the stay protection is necessary for an orderly and successful reorganization.  106 F.3d 506 (3d Cir. 1997) ("Courts have also extended the stay to nondebtor third parties where stay protection is essential to the debtor's efforts of reorganization").  The United States Bankruptcy Court for the District of New Jersey previously stated that the decision in *McCartney* "appears to be an endorsement of § 362 as an independent basis for extending the stay" to a non-debtor where the unusual circumstances of a case would "defeat the purpose of § 362" – if allowed to proceed.  *In re LTL Management, LLC*, 638 B.R. at 301.  Accordingly, section 362 prohibits Defendant from continuing to litigate the Fee Action, and pursuing discovery from the Debtors through that matter, during the limited pendency of these Chapter 11 Cases.

46.    Among other things, the Fee Action will decrease the available D&O Insurance Coverage as the cost of defense of the Fee Action comes out of the D&O limits, thus further impacting the Debtors' estates. *See Maertin v. Armstrong World Industries, Inc.*, 241 F. Supp. 2d

434, 446 (D.N.J. 2002) (internal citations and quotations omitted) ("The filing of a bankruptcy petition operates to stay any act to obtain possession of property of the estate . . . or to exercise control over property of the estate . . . The Third Circuit has held that insurance policies fit within section 541's definition of 'property of the estate.'").

47.    Additionally, as described herein, governing and/or services agreement documents of certain of the Debtors provide the Fee Action Defendants with indemnification rights that may be implicated by M&R's claims in the Fee Action.  *See In re Mallinckrodt plc*, No. AP 20-50850-JTD, 2021 WL 5275781, at *2 (D. Del. Nov. 10, 2021) ("the Bankruptcy Court held as a matter of law that 'the existence of contractual indemnification claims is sufficient to extend the stay'").

48.    Further, Third Circuit precedent makes clear that alter ego and veil-piercing theories—pursued by Defendant in the Fee Action—are also property of a debtor's estate.  *See In re Emoral, Inc*., 740 F.3d 875, 879-82 (3d Cir. 2014) (holding that alter ego claims were property of the debtor's estate); *see also Harrison v. Soroof Int'l, Inc*., 320 F. Supp. 3d 602, 613, 616 (D. Del. 2018) (same); *In re Mee Apparel, LLC*, No. 15-5697 (FLW), 2016 WL 3535805, at *6 (D.N.J. June 28, 2016) ("the controlling consideration is not whether the claims are specifically pled as alter-ego claims, or even whether they would succeed as alter-ego claims, but rather whether they are in the nature of alter-ego claims at all.") (emphasis omitted).  These potential estate claims are presently being investigated by the Debtors' Transaction Committees.

49.    For all the foregoing reasons, the Court should extend the automatic stay pursuant to section 362 of the Bankruptcy Code to the Fee Action, which improperly seeks to exercise control over the property of the Debtors' estates.

17

III.    **The Court Should Exercise its Authority Under Section 105(a) of the Bankruptcy Code to Enjoin the Continuation and Settlement of the Fee Action Outside of these Chapter 11 Cases**

50.     In the alternative, the Court should enjoin the Fee Action pursuant to section 105(a) of the Bankruptcy Code.  Section 105(a) provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  This includes "ample power to enjoin actions excepted from the automatic stay which might interfere in the rehabilitative process" of a bankruptcy case.  *In re Johns-Manville Corp.*, 26 B.R. 420, 425 (Bankr. S.D.N.Y. 1983), *aff'd*, 40 B.R. 219 (S.D.N.Y. 1984), *and appeal allowed, decision vacated in part on other grounds*, 41 B.R. 926 (S.D.N.Y. 1984) (citing 2 COLLIER ON BANKRUPTCY § 362.05 (15th Ed. 1982)).

51.     Under section 105(a), courts have broad authority "to enjoin parties other than the bankrupt from commencing or continuing litigation."  *In re Mountain Laurel Res. Co.*, 210 F.3d 361 (4th Cir. 2000) (internal citation and quotations omitted); *see also In re VistaCare Grp., LLC*, 678 F.3d 218, 231 n.11 (3d Cir. 2012) ("Bankruptcy courts have broad powers (in addition to 11 U.S.C. § 362) to protect the property of the estate.  For example, under 11 U.S.C. § 105(a), a bankruptcy court may issue injunctive relief.").  An injunction as to third-party litigation is appropriate where, among other things, the third-party litigation is likely to negatively impact a successful outcome in the debtor's bankruptcy proceeding.  *See In re W.R. Grace & Co.*, 386 B.R. at 30; *Philadelphia Newspapers*, 407 B.R. 606, 616-17 (E.D. Pa. 2009).

52.     Acting under the broad authority granted by section 105(a), courts have consistently enjoined claims against non-debtor entities to maintain the integrity of the debtor's estate and fully effectuate the protections of the automatic stay.  *See In re Johns-Manville Corp.*, 40 B.R. 219, 226 (S.D.N.Y. 1984) ("In the exercise of its authority under § 105, the Bankruptcy Court may use its injunctive authority to protect the integrity of a bankrupt's estate and the Bankruptcy Court's

18

custody thereof and to preserve to that Court the ability to exercise the authority delegated to it by Congress.") (internal quotations omitted); *see also In re. W.R. Grace & Co*., 386 B.R. at 30 (finding actions filed against a non-debtor directly impacted the bankruptcy estate because the debtor was obligated to indemnify the third party).

53.     As described above, continuation of the Fee Action will decrease the available D&O Insurance Coverage as the cost of defense comes out of the D&O limits, thus further impacting the estates. *See In re LTL Management, LLC*, 638 B.R. at 303 ("[I]t remains uncontested that Debtor shares insurance policies—which are estate property under 11 U.S.C. § 541(a)—with the Protected Parties."). Therefore, the continued litigation of the Fee Action against the Fee Action Defendants "has a conceivable effect on the bankruptcy estate because it effectively seeks to collect and liquidate claims against Debtor and could deplete available insurance coverage." *Id.* (internal quotations omitted) (internal citations omitted).

54.     Moreover, due to the Indemnification Obligations, as set forth in the RSA, the continuation and any settlement of the Fee Action during the pendency of the Chapter 11 Cases would only serve to further deplete significant funds from the Debtors' estates, and thus directly impacts the administration of the estates and the estates' property. *See In re Boy Scouts of Am. & Del. BSA, LLC*, 642 B.R. 504, 591 (Bankr. D. Del. 2022) ("There is no question that the outcome of a lawsuit" that implicates the Debtor's Indemnification Obligations would "conceivably have [an] effect on the estate being administered in [this] bankruptcy case."); *New Jersey Dep't of Treasury, Div. of Inv. v Fuld,* CIV. 09-1629AET, 2009 WL 1810356, at *4 (D.N.J June 25, 2009) (holding the indemnification agreement "likely to have an impact on the [debtor's] bankruptcy estate.").

55.     Additionally, any alter ego or veil-piercing theories and claims are also considered property of a debtor's estate. *See* 11 U.S.C. § 541(a)(1) (defining "property of the estate" broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case"); *see also Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d at 613 (applying Delaware law and finding that an alter ego claim is a property of the bankruptcy estate); *In re Bldgs. by Jamie, Inc.*, 230 B.R. 36, 42-44 (Bankr. D.N.J. 1998) (holding that an alter ego action is an equitable remedy and a corporate debtor's interest in the alter ego claim is property of the bankruptcy estate).

56.     An injunction is therefore appropriate in this case to prohibit Defendant from continuing or settling the Fee Action while the Chapter 11 Cases are pending. Further, such an injunction is critical to the Debtors' ability to achieve the purposes for which they commenced the Chapter 11 Cases. Courts considering the propriety of an injunction under section 105(a) typically apply a four-pronged test. *See Philadelphia Newspapers*, 407 B.R. at 616-17 (citing *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 157 (3d Cir. 2002). The four elements are: (i) the debtor's reasonable likelihood of a successful reorganization; (ii) the imminent risk of irreparable harm to the debtor's estate in the absence of an injunction; (iii) the balance of harms between the debtor and its creditors; and (iv) whether the public interest weighs in favor of an injunction. *Id.* at 616-17.

57.     "In considering a request for an injunction, these four factors are not weighed simultaneously against one another. Rather, the Court determines whether the first two threshold prongs are established, and if so, only then does it proceed to consider the third and fourth factors." *In re Philadelphia Newspapers, LLC*, 423 B.R. 98, 106 n.11 (E.D. Pa. 2010) (citing *Tenafly*, 309 F.3d at 157).

58.     Here, as set forth below, the Debtors have satisfied the threshold showing because: (i) the Debtors' prospects for a successful outcome in the Chapter 11 Cases are strong, and the Debtors have entered into an RSA that charts a clear and value-maximizing path forward for the Company during these Chapter 11 Cases and beyond, and (ii) the requested injunction is necessary to the Debtors' objective of negotiating such a path forward to emerge from bankruptcy well-positioned to remain a leader of the medical apparel market.  First Day Declaration, at ¶ 18.  In addition, as set forth below, the balance of the harms and consideration of public interests both weigh in favor of the requested relief.

### A.     A Successful Outcome in the Chapter 11 Cases is Likely

59.     In the bankruptcy context, the debtor's ability to successfully reorganize constitutes a reasonable likelihood of success for an injunction.  *See e.g.*, *In re Bestwall LLC*, 606 B.R. 243, 253-54 (Bankr. W.D.N.C. 2019) (recognizing the first factor in the test for a preliminary injunction as a reasonable likelihood of a successful plan of reorganization).  *See also Myerson & Kuhn v. Brunswick Assocs. Ltd. P'ship (In re Myerson & Kuhn)*, 121 B.R. 145, 154 (Bankr. S.D.N.Y 1990) ("Section 105 grants bankruptcy courts ample power to enjoin actions excepted from the automatic stay which might interfere in the rehabilitative process, whether in a liquidation or in a reorganization case.").

60.     "[T]o demonstrate a reasonable likelihood of success, a movant need only show the prospect or possibility that he or she will succeed, and need not prove same with certainty."  *LTL Mgmt.*, 638 B.R. at 320; *see also Bestwall*, 606 B.R. at 254 ("Establishing that a reorganization is likely to be successful is not intended to be a particularly high standard.").

61.     The Debtors' prospects of success in the Chapter 11 Cases are strong.  Since filing these cases, the Debtors have entered into an RSA that charts a clear and value-maximizing path

forward for the Company during the Chapter 11 Cases and beyond.  First Day Declaration, at ¶ 17;

Restructuring Support Agreement at p. 79.  The requested injunction is vital to those efforts.

62.    Moreover, the Debtors have sufficient resources to fund the costs of these Chapter

11 Cases.  First Day Declaration, at ¶ 18.

63.    As such, the Debtors have demonstrated a reasonable likelihood of successful

reorganization.

**B.    Failure to Enjoin Litigation of Fee Action Would Irreparably Harm the Debtors**

64.    To avoid the irreparable harm that would occur without the requested injunction,

this Court should enjoin the Fee Action from continuing during the limited pendency of the

Chapter 11 Cases.

65.    Recent Third Circuit authority establishes that the irreparable harm prong of the

test for injunctive relief can be satisfied by a showing of potential harm or the risk of harm.  Indeed,

the United States Bankruptcy Court for the District of New Jersey has recently clarified that "the

mere risk of a potentially adverse impact on a debtor's bankruptcy can be sufficient to support a

preliminary injunction" and the "plaintiff's theory that the debtor would not suffer an adverse

impact should not be tested at the debtor's peril."  *In re LTL Mgmt., LLC*, 640 B.R. 322, 337

(Bankr. D.N.J. 2022).

66.    Courts have held that a debtor will suffer irreparable harm absent an injunction of

litigation against a non-debtor if the litigation would trigger indemnification obligations and serve

as a "constant drain on resources and time."  *See LTL Mgmt., LLC*, 638 B.R. at 320-21; *W.R. Grace

& Co.*, 386 B.R. at 34.  When a debtor is obligated to indemnify a non-debtor facing litigation,

denying an injunction would irreparably harm the estate by subjecting the estate to an immediate

indemnity claim if the non-debtor was ultimately unsuccessful, thereby unnecessarily diverting, if

not depleting, the resources and assets of the estate.  *See W.R. Grace & Co.*, 386 B.R. at 34
("Therefore, by permitting the actions to proceed against [the non-debtor], Debtors face substantial
risk, should judgments be entered against [the non-debtor], of an immediate liquidated claim
against Debtors.").

67.     The United States Bankruptcy Court for the District of New Jersey recognized these
concerns as a valid basis for irreparable harm in *LTL Management*.  *See* 638 B.R. at 320.  In *LTL
Management*, the Court determined that the debtor was likely to suffer irreparable harm absent an
injunction of litigation against non-debtor related parties because of the debtor's indemnification
obligations.  *See id.* at 321.

68.     Moreover, as described herein, continued prosecution of the Fee Action will cause
irreparable harm to the Debtors and these Chapter 11 Cases by potentially implicating the Debtors'
Indemnification Obligations and draining the estates' assets and resources.  To avoid the risk to
the estates that could result from an unfavorable decision, Debtors would be compelled to expend
valuable resources participating and defending against the Fee Action.  Requiring the Debtors to
expend valuable time and considerable resources on the Fee Action at a time when the Debtors are
focused on their value-maximizing path forward would irreparably harm the Debtors by detracting
from their reorganization efforts and diminishing the estates' assets.  This would undermine the
breathing spell and bankruptcy protections afforded in chapter 11.

69.     Accordingly, the Debtors have demonstrated irreparable harm absent the requested
injunction.

> **C.     The Irreparable Harm that the Debtors Would Suffer in the Absence of an
> Injunction Substantially Outweighs Any Prejudice to Defendant**

70.     The balance of the harms weighs heavily in favor of the requested injunction
because prosecution of the Fee Action outside of the bankruptcy litigation would cause irreparable

harm to the Debtors and their estates by expending valuable resources at a time when the Debtors are focused on their value-maximizing path forward and creates a risk of a judgment that would impact the Debtors.  It would also compromise the protections of the automatic stay.

71.    On the other hand, the harm, if any, that an injunction might cause Defendant is minimal, to the extent it would exist at all.  The issuance of an injunction will not permanently deprive Defendant of an opportunity to pursue the Fee Action or result in a finding on the merits of the Fee Action.  Instead, it will merely halt any claims during the limited pendency of these Chapter 11 Cases.

72.    Further, "it is well established that mere delay is insufficient to prevent the issuance of an injunction." *Bestwall*, 606 B.R. at 257.  Accordingly, for the reasons set forth above, the balance of harms weighs in favor of the Debtors and this Court's issuance of the requested injunction.

### D.    The Public Interest Favors the Requested Injunction

73.    Courts have consistently recognized the public interest in a successful chapter 11 case. *See In re Sudbury, Inc.*, 140 B.R. 461, 465 (Bankr. N.D. Ohio 1992) ("Courts have generally recognized a public interest in reorganization"); *In re Lazarus Burman Assocs.*, 161 B.R. 891, 901 (Bankr. E.D.N.Y 1993) ("It is clear that the public interest will best be served if Debtor continues to work as they have toward the eventual goal of successful reorganization.").

74.    It is in the public interest that "the bankruptcy process [is] utilized to the fullest extent"—a result made possible by a comprehensive injunction.  *W.R. Grace*, 386 B.R. at 36.  Moreover, injunctive relief is critical to promoting fairness among similarly situated creditors and judicial economy within the court system.  This result would not be possible if Defendant is permitted to pursue the Fee Action and circumvent the bankruptcy process to recover the estates' assets at the expense of all similarly situated creditors.

24

75.     Accordingly, for the foregoing reasons, each of the four factors clearly weighs in favor of this Court issuing a preliminary injunction prohibiting Defendant from continuing and potentially settling the Fee Action while these Chapter 11 Cases are pending.

## NOTICE

76.     Consistent with Paragraph 18 of the Case Management Order,[7] notice of this Motion is being provided to:  (i) the Office of the United States Trustee for Region 3; (ii) the Defendant in this Adversary Proceeding (through their counsel, if known); (iii) counsel for the Committee and the Committee's co-chairs; (iv) counsel to secured creditors; (v) counsel to the First Lien Ad Hoc Group; (vi) counsel to the Cross-Holder Group; and (vii) any other person or entity listed on the Core Service List (as defined in the Case Management Order).

## CONCLUSION

For the reasons discussed above, the Debtors request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, extending the automatic stay to the Fee Action, and in the alternative, enjoining the continuance and settlement of Fee Action while the Debtors' Chapter 11 Cases remain pending, and granting such other and further relief as the Court deems just and proper.

*[Remainder of Page Intentionally Left Blank.]*

---

[7]     *See* Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief [Docket No. 70] (the "**Case Management Order**").

Dated:  February 22, 2024

/s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:    msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900
Email:          jsussberg@kirkland.com

-and-

Chad J. Husnick, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200
Email:          chusnick@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

26

**<u>Exhibit A</u>**

**Proposed Order**

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022

Chad J. Husnick, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| In re: <br> CAREISMATIC BRANDS, LLC, *et al.* <br>       Debtors. | Chapter 11 <br><br> Case No. 24-10561 (VFP) <br><br> (Jointly Administered) |
| CAREISMATIC BRANDS, LLC, *et al.*, <br>       Plaintiffs, <br> v. <br> MICHELMAN & ROBINSON, LLP, <br>       Defendant. | Adv. Proc.  No. 24-01086 |

<u>**ORDER CONFIRMING THAT THE AUTOMATIC STAY EXTENDS TO THE FEE ACTION**</u>

The relief set forth on the following pages, numbered two (2) through five (5), is **ORDERED**.

| Debtors: | CAREISMATIC BRANDS, LLC., *et al.* |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | ORDER CONFIRMING THAT THE AUTOMATIC STAY EXTENDS TO THE FEE ACTION |

This matter coming before the Court on the *Debtors' Motion for Declaratory and Injunctive Relief (I) Confirming That the Automatic Stay Extends to the Fee Action; And, In the Alternative, (II) Preliminarily Enjoining the Fee Action During the Pendency of These Chapter 11 Cases* [Adv. Dkt. ___] (the "**Motion**");[1] and the Court having considered (i) the submissions of the parties, the Motion, the Percy Declaration (including the incorporated First Day Declaration), and the responses, objections and replies in respect of the Motion, (ii) the arguments set forth on the record at a hearing held on March 14, 2024, and the evidence submitted by the parties, including declarations, testimony and exhibits filed with or presented to the Court, the Court finds and concludes as follows:

## Background, Jurisdiction, and Venue

A.    For purposes of this Order, the term "**Careismatic Matters**" shall mean the litigation and arbitration between the Debtors[2] and Michelman & Robinson, LLP ("**M&R**" or "**Defendant**").[3]

B.    For purposes of this Order, the term "**Fee Action**" shall mean the litigation by M&R against non-Debtors, including the Debtors' Sponsor, Partners Group (USA) Inc. and its affiliates,

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

[2]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.donlinrecano.com/careismatic. The location of Debtor Careismatic Brands, LLC's principal place of business and the Debtors' service address in these Chapter 11 Cases is: 1119 Colorado Avenue, Santa Monica, California 90401.

[3]    The Careismatic Matters refer to the matters captioned *Michelman & Robinson, LLP v. Careismatic Brands, Inc. f/k/a Strategic Partners, Inc.*, ADRS Inquiry No. 40826; *Michelman & Robinson, LLP v. Careismatic Brands, LLC*, Los Angeles County Superior Court Case No. 23STCV12186; *Careismatic Brands v. Michelman & Robinson, LLP et al.*, Los Angeles County Superior Court Case No. 23STCV30066.

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC., *et al.* |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | ORDER CONFIRMING THAT THE AUTOMATIC STAY EXTENDS TO THE FEE ACTION |

former CEO, Girisha Chandraraj, and Chairman of the Board, Michael Penner (the "**Fee Action Defendants**").[4]

  C.  For purposes of this Order, the term "**Indemnification Obligation**" shall mean any obligations of the Debtors to indemnify "current and former officers, directors, partners, managers, members, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such directors, officers, managers, members, partners, agents, or employees, based upon any act or omission for or on behalf of the Debtors" pursuant to the Restructuring Support Agreement.

  D.  For purposes of this Order, the term "**D&O**" shall mean Directors and Officers, and specifically the available Director & Officer Insurance Coverage.

  E.  For purposes of this Order, the term "**Transaction Committees**" shall mean the Transaction Committees of CBI Parent, L.P. and CBI Intermediate, Inc.

  F.  The Debtors seek, pursuant to sections 105(a) and 362(a) of the Bankruptcy Code, an order extending the automatic stay to the Fee Action, or in the alternative, an order enjoining Defendant from continuing to prosecute or settle the Fee Action while the Chapter 11 Cases are pending.

  G.  The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Pursuant to Bankruptcy Rule 7008, the Debtors have consented to the entry of final orders or a final judgment

---

[4] The Fee Action refers to the matter captioned *Michelman & Robinson, LLP v. Partners Group et al.*, Los Angeles Superior Court Case No. 23STVC05652.

| | |
|---|---|
| Debtors: | CAREISMATIC BRANDS, LLC., *et al*. |
| Case No. | 24-10561 (VFP) |
| Caption of Order: | ORDER CONFIRMING THAT THE AUTOMATIC STAY EXTENDS TO THE FEE ACTION |

by this Court in this Adversary Proceeding.  Venue for this matter is proper in this District pursuant to 28 U.S.C. § 1409.

### **Request for Extension of the Automatic Stay**

H.    The Debtors have demonstrated that the automatic stay under 11 U.S.C. § 362(a) extends to the Fee Action—including because the Fee Action implicates the Debtors' Indemnification Obligations and D&O Insurance Coverage that are property of the Debtors' estates, and because alter ego and veil-piercing theories asserted in the Fee Action overlap with the investigation of estate claims by the Debtors' Transaction Committees.

**Based on these findings and conclusions, IT IS HEREBY ORDERED THAT:**

1.    The Motion is **GRANTED** as set forth herein.  All objections to the relief granted herein are **OVERRULED**.

2.    The Bankruptcy Code's automatic stay extends to the Fee Action, pursuant to section 362(a), and thus Defendant is enjoined from further violations of the automatic stay through pursuit of the Fee Action.

3.    Pursuant to Bankruptcy Rule 7065, the Debtors are relieved from posting any security in connection with this Order pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

4.    This Order shall be immediately effective and enforceable upon its entry.  In accordance with section 108(c) of the Bankruptcy Code, this Order shall toll, as of January 22, 2024, any applicable non-bankruptcy law, any order entered in a non-bankruptcy proceeding, or any agreement that fixes a period under which the Defendant is required to commence or continue a civil action in a court other than this Court on the Fee Action until the later of:  (a) the end of

| Debtors: | CAREISMATIC BRANDS, LLC., *et al.* |
|---|---|
| Case No. | 24-10561 (VFP) |
| Caption of Order: | ORDER CONFIRMING THAT THE AUTOMATIC STAY EXTENDS TO THE FEE ACTION |

such period, including any suspension of such period occurring on or after the commencement of the Chapter 11 Cases; or (b) 30 days after the termination or expiration of the preliminary injunction issued by this Order.

5.      The Debtors shall cause a copy of this Order to be served via e-mail, facsimile, hand delivery or overnight carrier on counsel for the Defendant, counsel for the Committee, and the Office of the United States Trustee within three business days of its entry on the Court's docket.

6.      This Order shall be promptly filed in the Clerk of Court's office and entered into the record, and, except as the Court may otherwise determine, it shall remain effective for the period through and including 30 days after the effective date of a confirmed plan in the Chapter 11 Cases that is no longer subject to appeal or discretionary review.

7.      The requirement set forth in D.N.J. LBR 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

9.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

10.      The terms and conditions of this Order shall be effective immediately upon its entry.

11.      The Court shall have exclusive jurisdiction over this Order and any and all matters arising from or relating to the implementation, interpretation, or enforcement of this Order.